# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

UNITED STATES OF AMERICA,

CASE NO.: 2:18-cr-50

v.

ANDREW RILEY,

Defendant.

## <u>ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

The Government indicted Defendant on seven felony counts related to distribution of a controlled substance, in violation of 21 U.S.C. §§ 841 and 846.   Doc. 154.   Before the Court are six motions by Defendant.   Docs. 300, 301, 302, 303, 304, 305.   Three of the motions concern requests for discovery, docs. 300, 301, 305; one motion concerns disclosure of the identities of confidential Government sources, doc. 302; one concerns notice under Federal Rule of Evidence 404(b), doc. 303; and one seeks suppression of certain evidence obtained by wiretap, doc. 304.

For the reasons set forth below, the Court **DENIES as moot** two of Defendant's discovery motions, docs. 300, 301, and Defendant's request for notice under Rule 404(b), doc. 303.   The Court **DENIES without prejudice** Defendant's motion requesting production of <u>Brady</u> materials, doc. 302, and Defendant's motion seeking disclosure of the identities of confidential Government sources, doc. 305.   I **RECOMMEND** the Court **DENY** Defendant's motion to suppress evidence obtained by wiretap.   Doc. 304.

**I.      Defendant's Motions for Discovery, Notice Under Rule 404(b), and <u>Brady</u> Materials (Docs. 300, 301, 303, 305)**

During a motions hearing on March 6, 2019, defense counsel withdrew his request for oral argument on his Motion for <u>Jencks</u> Material and Motion for Discovery and Inspection, docs. 300, 301, as he had resolved those discovery issues by conferring with the Government. Defense counsel also indicated that there were no outstanding issues related to his Motion for Notice of Government's Intent to Rely upon Other Crimes Evidence, doc. 303, but reserved the right to file a motion in limine at a later date.   Accordingly, these three Motions, docs. 300, 301, and 303, are **DENIED as moot**.

Defendant also filed a motion seeking disclosure of information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976).   Doc. 302 at 1.   During the motions hearing, Defendant indicated that the only unresolved issue was his request for <u>Giglio</u> materials related to three confidential human sources.[1]   Defendant argued that the Government may rely on testimony from these sources during trial or sentencing and, because the identities of these individuals is confidential, defense counsel cannot obtain <u>Giglio</u> materials on its own.   In response, the Government explained (1) the affidavits provided in support of the wiretaps in this case provide information related to the criminal histories of confidential sources as well, as any payments made to those sources by the Government, and (2) the Government will provide all materials required to be disclosed under <u>Giglio</u> at least 14 days before trial for any witness the Government intends to

---

[1]      At the motions hearing, defense counsel initially stated he had some unresolved concerns regarding the role of a "John Bryan Highsmith" and whether Highsmith was one of the three confidential sources identified in the discovery materials, which could have impacted the Government's obligations to disclose <u>Brady</u> and <u>Giglio</u> materials.   That issue was resolved at the hearing.

call as a witness.   Defendant argued that 14 days prior to trial may not provide enough time to research witnesses' criminal histories.

In light of these facts, Defendant's request for <u>Giglio</u> materials is not ripe for resolution at this time.   The Government has not identified any confidential source it intends to call as a witness.   Furthermore, the Government has already provided some potential <u>Giglio</u> information pertaining to confidential sources in the affidavits supporting the wiretaps in this case and has represented it will provide all required <u>Giglio</u> material at least 14 days before trial.[2]

Accordingly, the Court **DENIES without prejudice** Defendant's Motion for Release of <u>Brady</u> Materials.   Doc. 305.

## II.   Defendant's Motion for Disclosure of Identity of Confidential Human Sources (Doc. 302)

Defendant moves the Court to compel the disclosure of the identity of any confidential human sources "who either directly participated in any drug transaction that is alleged to have been conducted by [Defendant] or who provided any information that the Government intends to present or rely on at trial, at sentencing, or in a Presentence Investigation Report."   Doc. 302 at 1.   During the motions hearing, defense counsel explained that the discovery materials produced by the Government identify three confidential human sources (identified in the materials as "CH1," "CH2," and "CH3") who provided information pertaining to Defendant, and counsel stated that one or two of the informants may have participated in transactions that allegedly

---

[2]     Defendant's generalized concerns of prejudice regarding the timing of <u>Giglio</u> disclosures do not require earlier disclosure of the requested information.   Moreover, such materials generally need only be disclosed in time for the material to be put to effective use in cross examining witnesses at trial. <u>See, e.g.</u>, <u>United States v. Najera-Perez</u>, No. 1:12-CR-232-2-CAP, 2014 WL 888651, at *28 (N.D. Ga. Mar. 6, 2014) ("Time after time, the Eleventh Circuit has concluded that there was no constitutional violation even when <u>Brady</u> or <u>Giglio</u> materials are supplied after the start of the trial.").   If Defendant identifies some specific prejudice that may be suffered due to a particular witness or some particular piece of <u>Giglio</u> information, Defendant may present that issue to the Court at that time.

involved Defendant.   Defendant asks that the Court order the Government to disclose the identities of these three individuals.   Defense counsel explained that he seeks the identity of these individuals so that he can investigate and collect impeaching evidence before trial. Defense counsel further explained he is seeking disclosure regardless of whether the Government intends to call the individuals as witnesses.   Rather, defense counsel seeks disclosure if the Government intends to rely on or use any information obtained from these sources at any stage of proceedings.

The Government opposes Defendant's request.   Doc. 428.   First, the Government has not determined if it intends to call any confidential source as a witness at trial.   Second, the Government confirmed it will provide the names of all confidential sources it elects to call as witnesses and, as noted above, will provide <u>Brady</u>, <u>Giglio</u>, and Jencks Act materials for all such witnesses (which may also identify the confidential sources), as required.   Defendant maintains that the Court should order disclosure, even considering the Government's representations.

Defendant relies on <u>Roviaro v. United States</u>, 353 U.S. 53 (1957), in support of his request.   Doc. 302 at 2.   In <u>Roviaro</u>, the United States Supreme Court explained the government is generally privileged from disclosing "the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," but recognized that the privilege is not absolute.   <u>Roviaro</u>, 353 U.S. at 59.   Indeed, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."   <u>United States v. Flores</u>, 572 F.3d 1254, 1265 (11th Cir. 2009) (quoting <u>Roviaro</u>, 353 U.S. at 60–61).

The holding in <u>Roviaro</u> does not apply where the Government intends to call a confidential source as a witness.   <u>Banks v. Dretke</u>, 540 U.S. 668, 697 (2004) ("The issue of evidentiary law in <u>Roviaro</u> was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does not call as a trial witness."); <u>United States v. Najera-Perez</u>, No. 1:12-CR-232-2, 2014 WL 888651, at *26 (N.D. Ga. Mar. 6, 2014) ("[T]he holdings of <u>Roviaro</u> do not apply when the informants will testify at trial.").   Thus, where the witness will testify, there is no basis under <u>Roviaro</u> for early disclosure of a confidential source's identity because the defendant will have the opportunity to cross-examine the individual.   <u>United States v. Pasby</u>, No. 1:16-CR-145-22, 2017 WL 10402560, at *11 (N.D. Ga. Oct. 4, 2017), *report and recommendation adopted*, 2018 WL 4953235 (N.D. Ga. Oct. 12, 2018); <u>Najera-Perez</u>, 2014 WL 888651, at *26 (noting that early disclosure of a testifying confidential informant might be required under some authority other than <u>Roviaro</u>, such as the Jencks Act, <u>Brady</u>, or <u>Giglio</u>, but concluding where the Government has agreed to make necessary disclosures under those other authorities, there is no basis for early disclosure of a confidential source's identity).   Therefore, to the extent Defendant is requesting the disclosure of confidential sources   the Government intends to call as witnesses, Defendant has not asserted any legal basis for that request.[3]

To the extent Defendant seeks the identities of confidential sources who will not be called as witnesses at trial, the request is subject to the balancing test in <u>Roviaro</u>.   This test requires the

---

[3]     To be clear, a criminal defendant has no absolute right to a list of the Government's witnesses in advance of trial.   <u>See</u> <u>United States v. Johnson</u>, 713 F.2d 654, 659 (11th Cir. 1983).   The Federal Rules of Criminal Procedure, and Rule 16 in particular, do not require the Government to disclose its witnesses. <u>United States v. Hastie</u>, No. CR 14-00291, 2015 WL 13309497, at *2 (S.D. Ala. Mar. 20, 2015).   And while Local Rule 12.3 requires pre-trial disclosure of witnesses "upon which the government intends to rely to establish the defendant's predisposition to commit the crime alleged," there is no requirement for the Government to disclose all of its witnesses.

Court to balance the Government's interest in "effective law enforcement" and the "public interest in disclosing the identity of anyone whose testimony 'would be relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'"   United States v. Panton, 846 F.2d 1335, 1336 (11th Cir. 1988) (quoting Roviaro, 353 U.S. at 60–61).   In performing this balancing test, courts consider three factors: (1) the Government's interest in non-disclosure; (2) the extent of the informant's participation in the criminal activity; and (3) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant.   United States v. Tenorio-Angel, 756 F.2d 1505, 1511 (11th Cir. 1985).   Where an informant acted as a mere tipster, disclosure is not required; however, where the informant was the sole participant in the charged offense other than the accused, disclosure is mandated.   United States v. Gutierrez, 931 F.2d 1482, 1490–91 (11th Cir. 1991).

The defendant bears the burden of showing that an informant's probable testimony will "significantly aid in establishing an asserted defense."   Tenorio-Angel, 756 F.2d at 1511.   In order to meet his burden, the defendant must point to the "information he believes he would obtain from the confidential informant [and] why it would materially support his defense." United States v. Jackson, No. 1:16-CR-145, 2017 WL 10402561, at *12 (N.D. Ga. Oct. 5, 2017). A defendant's "[m]ere conjecture about the possible relevance of the informant's testimony" does not warrant disclosure of an informant's identity.   United States v. Young, 161 F. App'x 922, 927 (11th Cir. 2006)   In other words, if Defendant wishes to obtain the identity of confidential informants the Government does not intend to call at trial, he must point to specific information that these informants are likely to provide that would be helpful to his defense.

Defendant has not alleged sufficient facts for the Court to order disclosure of identities under Roviaro.[4]   Defendant has not indicated what information he is likely to acquire from these confidential sources, nor has he shown how that information might be helpful to his defense. Defendant instead merely states that "the Movant's need to impeach the credibility of the CHS will outweigh any interest in nondisclosure if the government . . . intends to present the allegation of the CHS during any court proceeding or other process."   Doc. 302 at 2. Moreover, Defendant has not explained the degree to which these confidential sources participated in the charged offense or directness of the relationship between an asserted defense and the probable testimony of the informant.[5]   And the Government has not provided any information regarding its interest in non-disclosure.   The Court, therefore, does not have the information required to engage in the balancing test set forth by the Eleventh Circuit.

Accordingly, the Court **DENIES without prejudice** Defendant's Motion for Disclosure of Identity of Confidential Human Sources.[6]   Doc. 302.

---

[4]   Notably, if the movant establishes an adequate basis for disclosure of a confidential source's identity under Roviaro, the next step is typically to conduct an in camera hearing to evaluate the need for disclosure.   See, e.g., United States v. Young, 161 F. App'x 922, 928 (11th Cir. 2006); United States v. Gutierrez, 931 F.2d 1482, 1489 (11th Cir. 1991); United States v. Panton, 846 F.2d 1335, 1337(11th Cir. 1988); United States v. Degaule, 797 F. Supp. 2d 1332, 1384 (N.D. Ga. 2011) (finding that movant had not "a sufficiently specific demonstration of the relevancy and potential helpfulness of the informers' testimony to merit an in camera hearing").   Here, the Court does not find that an in camera hearing is warranted at this time.

[5]   At the motions hearing, Defendant stated that one or two of the confidential sources participated in drug transactions in which Defendant also allegedly participated.   However, Defendant did not provide any specific information about these transactions or explain how information from the confidential sources would assist him in preparing his defense (e.g., Defendant did not allege that he was mistakenly identified as a participant in this transactions).   Defendant's general statements about the confidential sources' involvement is not sufficient to satisfy his burden under Roviaro.

[6]   Although Defendant has failed to meet his burden under Roviaro, he is not foreclosed from raising the issue in the future.

### III. Defendant's Motion to Suppress Evidence Obtained from Interception of wire and Electronic Communications (Doc. 304)

In October 2017, the Government began investigating a suspected drug-trafficking organization responsible for distributing crack and crack cocaine in Brunswick, Georgia. Doc. 439-1 at 12.   Through the course of this investigation, the Government began investigating Defendant as the suspected leader of the organization.   Id. at 8.   As part of the investigation, the Government obtained wiretaps of two separate phones ("TT1" and "TT2") allegedly connected to Defendant and his trafficking network.   Docs. 439, 439-2.

Defendant moves the Court to suppress the information obtained from both wiretaps on multiple grounds.   Defendant argues the information obtained from the TT2 wiretap should be suppressed because the application for that wiretap was not supported by probable cause. Doc. 304 at 6–7.   Defendant argues that the information obtained from both wiretaps should be suppressed because: (1) the Government did not adequately show the necessity of either wiretap; (2) neither of the intercepts were timely sealed; and (3) both wiretaps impermissibly authorized the gathering of geolocation data.   Id. at 7–14.[7]   Defendant also requested an evidentiary hearing on his motion, which the Court granted and held in conjunction with the motions hearing on March 6, 2019.   Doc. 304 at 1; Doc. 442.

#### A. Background

*TT1 Wiretap*.   On March 14, 2018, the Honorable Lisa Godbey Wood authorized the first wiretap permitting the Government to record communications to and from TT1, bearing a

---

[7]     Defendant raised four other arguments opposing the validity of the wiretaps in his motion: (1) the orders authorizing the wiretaps did not "specify the persons whose communications may be intercepted"; (2) law enforcement agents did not minimize their interceptions of "non-pertinent calls"; (3) the orders and applications did not sufficiently identify the types of communications to be intercepted and; (4) the orders failed to identify the listening posts where communications would be intercepted.   Doc. 304 at 8–9, 12–13.   Defendant withdrew each of these arguments during the March 6, 2019 hearing.   Doc. 442.

number ending in 9955.   Doc. 439 at 12.   The TT1 wiretap application was supported by a 55-page affidavit by Special Agent Steven T. Hall of the Federal Bureau of Investigation ("FBI").   Doc. 439-1.   In his affidavit, Agent Hall described a drug-distribution network in Brunswick, Georgia, involving several individuals, including Defendant.   Id. at 8.   Agent Hall described the investigation of this network, including law enforcement's use of confidential human sources, drug purchases made by the sources, recordings made by the sources, and other information obtained from the sources.   Id. at 12–30.

Agent Hall explained that a confidential source had engaged in consensually recorded calls, primarily with Defendant, but also with Codefendant Seals on TT1 to purchase drugs.   Id. at 21–25.   This source also advised the Government that Defendant frequently changed his telephone number.   Id. at 17.   Two other confidential sources purchased narcotics from Defendant and consensually recorded conversations with him on phones other than TT1 and TT2.   Id. at 37–38.   A previously authorized pen register showed that numerous calls were made from TT1 to numbers associated with other individuals suspected of being members of Defendant's trafficking organization.   Id. at 32–34.

Agent Hall further described the use of cellular telephones by participants in the distribution network, including Defendant's use of cellular telephones and the use of TT1 in the distribution network.   Id. at 14–19.   Agent Hall described surveillance conducted by law enforcement, analysis of telephone records for TT1, the need for a wiretap, and a detailed description of other investigative techniques that were tried or considered during the investigation.   Id. at 30–50.   Agent Hall requested geo-location data on TT1, in addition to a wiretap, in order to "identif[y] [Defendant's] daily patterns as they relate to his narcotics

business."  Id. at 44.   Finally, Agent Hall explained the efforts law enforcement would take to

minimize the extent of wire interceptions.   Id. at 50–53.

In sum, Agent Hall set forth detailed facts demonstrating Defendant was using TT1 in

furtherance of a drug-distribution scheme, that alternative investigative methods had been used

or would be futile, and that a wiretap of TT1 was an effective means of acquiring information

about the drug distribution network.

*TT2 Wiretap*.   On March 22, 2018, Judge Wood authorized the second wiretap

permitting the Government to record communications to TT2, bearing a number ending in 2533.

Doc. 439-2 at 14.   The TT2 wiretap application was supported by a 54-page affidavit by Special

Agent Jonathan Wood of the FBI.   Doc. 439-3.   Agent Wood's affidavit contained information

similar to that contained in Agent Hall's affidavit (e.g., describing the same drug-distribution

network in Brunswick, Georgia, and identifying various participants in that network) but focused

on the role of TT2 in the drug-distribution network and Mr. Riley's use of the TT2 line.   Agent

Wood expressly incorporated Agent Hall's affidavit in support of the TT1 wiretap request.   Id.

at 8.

In his affidavit, Agent Wood explained that three days after the wiretap of TT1 was

approved, Defendant purportedly began instructing customers to contact him on TT2,

presumably because federal law enforcement officers had executed a large arrest a few days

earlier.   Id. at 9, 21, 22.   Although Defendant purportedly used TT1 to conduct his business,

Agent Wood stated that law enforcement officers had observed multiple suspected drug

transactions at a location Defendant frequently utilized for his drug sales without any

corresponding activity on TT1.   Id.   This supported Special Agent Wood's belief that

Defendant had started utilizing TT2 instead of TT1.   Id.   Special Agent Wood also stated that

183 calls were made to or from TT2 between March 14 and 18, 2018, and that many of the numbers contacting TT2 were also contacting TT1.   Id. at 26.   Special Agent Wood noted that, like the wiretap of TT1, a wiretap of TT2 was necessary as traditional investigative techniques were insufficient to allow the Government to effectively investigate all aspects of Defendant's drug-trafficking operations.   Id. at 28–48.   Agent Wood requested geo-location data from TT2 for the same reasons the Government requested the data from TT1 and demonstrated that any wire interceptions of TT2 would be minimally invasive.   Id. at 48–53.

Like the affidavit in support of the TT1 wiretap application, Agent Wood's affidavit set forth detailed facts demonstrating Defendant was using TT2 in furtherance of a drug-distribution scheme, that alternative investigative methods had been used or would be futile, and that a wiretap of TT2 was an effective means of acquiring information about the drug-distribution network.

*Intercepts and Sealing*.   Law enforcement began intercepting communications under both wiretaps on the dates they were authorized (TT1 on March 14, 2018 and TT2 on March 22, 2018) and ceased intercepting all communications on April 12, 2018.   Docs. 439-5, 439-6.   The discs containing intercepts of the communications were sealed by Order of the Court on April 17, 2018.   Id.   During the March 6, 2019 hearing, the Government proffered that it contacted the Court on April 16, 2018 to request sealing but was notified that the issuing judge was unavailable until the following day, April 17, 2018, when the intercepts were sealed.

**B.     Standing**

The Government concedes Defendant has standing to contest the TT1 wiretap but disputes whether Defendant can challenge the TT2 wiretap.   At the March 6, 2019 hearing, Defendant declined to say whether he had ever used TT2, and Special Agent Wood, who also

testified, stated that he could not recall if he heard Defendant's voice on any calls intercepted by TT2.   Doc. 442.   The Government later clarified that Agent Wood had heard Defendant on TT2 and stipulated that the wiretap of TT2 was directed at Defendant.   Id.

To have standing to contest the admissibility of the information obtained from the Government's wiretaps, the challenging party must be an "aggrieved person" within the meaning of 18 U.S.C. § 2518(10)(a).   An "aggrieved person" is defined by statute as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."   18 U.S.C. § 2510(11).   A defendant bears the burden of showing that he has standing to challenge the intercepted information.   United States v. Flores, No. 1:05-cr-558, 2007 WL 2904109 (N.D. Ga. Sept. 27, 2007).

In this case, the Court need not consider whether Defendant has put forth evidence that he was a party to the communications intercepted from TT2.   Defendant contends—and the Government conceded at oral argument—that he was an enumerated target of the TT2 wiretap, and, therefore was "a person against whom the interception was directed."   Doc. 442. Defendant, therefore, has standing to challenge the validity of information obtained from the TT2 wiretap.

**C.    Probable Cause for TT2 Wiretap**

Defendant argues the affidavit in support of the TT2 wiretap application failed to establish probable cause to believe that the target telephones would be used in furtherance of any criminal activity.   Doc. 304 at 7–8.

Applications for wiretaps must be supported by the same probable cause required for a search warrant.   United States v. Hyppolite, 609 F. App'x 597, 601 n.2 (11th Cir. 2015) (citing United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990)).   Specifically, applications must be

supported by probable cause to believe that "an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of [Title 18]."   18 U.S.C. § 2518.   Section 2516 includes any offense connected to "the manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic drugs," as well as "any Federal felony."   18 U.S.C. §§ 2516(1)(e), 2516(3).   The determination of whether probable cause exists should be a "practical, common-sense decision" focused on whether the "totality of the circumstances" indicate there is probable cause the evidence sought will be obtained. Hyppolite, 609 F. App'x at 601 n.2.   For a wiretap, the "information supporting probable cause should be sufficient enough for a determination the particular telephone number is being used in furtherance of unlawful activity."   Id. (citing United States v. Domme, 753 F.2d 950, 954 n.2 (11th Cir. 1985)).   Probable cause does not require overwhelmingly convincing evidence but only "reasonably trustworthy information."   Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996).   Finally, wiretap orders issued pursuant to Title III are presumed to be valid.   United States v. Weber, 808 F.2d 1422, 1423 (11th Cir. 1987).

Defendant argues that the affidavit must establish probable cause that he personally "was committing one of the crimes enumerated in section 2516[.]"   Doc. 304 at 6–7.   However, an application for a wiretap must show "probable cause for belief that *an individual* is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of [Title 18]."   18 U.S.C. § 2518(3)(a) (emphasis added).   As previously noted, "any Federal felony" is included in the offenses enumerated in § 2516.   18 U.S.C. § 2516(3).   In addition to showing probable cause to believe that an individual has committed a federal felony, an application must also show "probable cause for belief that particular communications concerning that offense will be obtained through such interception[.]"   18 U.S.C. § 2518(3)(b).   Collectively, these

requirements mean that a "wiretap application need not provide probable cause of criminal activity for each person named in an application . . . What is required is sufficient information so that a judge could find probable cause to believe that the telephone in question is being used in an illegal operation." Domme, 753 F.2d at 954 n.2 (citations omitted).   The affidavit, therefore, need only establish probable cause to believe that TT2 was being used in the commission of federal felonies.

The application for the TT2 wiretap and Agent Wood's supporting affidavit established ample probable cause to believe that TT2 was being used in furtherance of numerous federal felonies.[8]   Agent Wood's affidavit demonstrated that Defendant was participating in—and possibly heading up—a drug-distribution network and that Defendant regularly used cellular telephones as part of his drug business.   Moreover, Agent Hall's and Agent Wood's affidavits demonstrated that Defendant used TT1 and TT2 in the course of conducting drug transaction. Doc 439-1 at 24–25, 35–38; Doc. 439-3 at 9, 21, 22, 26.   The affidavits also established probable cause to believe that Defendant curtailed his use of TT1 to facilitate drug transactions following several arrests, and that he directed individuals involved in the drug trade to begin contacting him on TT2.   Doc. 439-3 at 9, 21, 22.   In sum, the totality of the circumstances, as set forth in great detail in Agent Hall's and Agent Wood's affidavits, established probable cause that TT2 was being used in furtherance of federal felonies.

Defendant argued that the TT2 affidavit impermissibly incorporated the TT1 affidavit, that the second affidavit, therefore, should be evaluated without considering the first, and that the

---

[8]       Specifically, the Court found probable cause to believe that Defendant was committing various drug offenses in violation of Title 21, as well as violent crimes in aid of racketeering and various firearms offenses in violation of Title 18.   Doc. 439-2 at 2.

TT2 affidavit standing on its own does not establish probable cause.   The Court does not find these arguments persuasive.

First, even if the Court evaluates the second affidavit without any reference to the first, probable cause for the TT2 wiretap exists.   As discussed above, Agent Wood's affidavit contains detailed factual allegations linking Defendant and his alleged criminal activities to TT2. Agent Wood's affidavit—on its own—described Defendant's use of cellular telephones in the drug trade and described recorded communications where Defendant directed individuals involved in the drug trade begin contacting him on TT2.   Doc. 439-3 at 21, 22.   Probable cause for the TT2 wiretap was plainly established based on Agent Wood's affidavit alone.

Furthermore, the Court rejects Defendant's argument that Agent Wood could not incorporate by reference Agent Hall's earlier affidavit submitted in support of the TT1 application.   Defendant does not cite any authority supporting his argument, and courts generally approve of affidavits that incorporate by reference other statements.   For example, the former Fifth Circuit Court of Appeals held that a law enforcement officer's statement made in an application for a warrant was properly considered, even where the statement was not sworn to because the statement was incorporated by reference into a sworn complaint and affidavit.   See United States v. One Olivetti Elec. 10-Key Adding Mach., 406 F.2d 1167, 1168 (5th Cir. 1969); see also United States v. Montague, No. 14-CR-6136, 2017 WL 9517689, at *4 (W.D.N.Y. Feb. 27, 2017), report and recommendation adopted, 2017 WL 3483665 (W.D.N.Y. Aug. 15, 2017) (discussing with approval affidavits offered in support of a warrant application that incorporated by reference previous affidavits submitted by the affiant); United States v. Edwards, No. CR11-2025, 2011 WL 4443031, at *1 (N.D. Iowa Sept. 1, 2011), report and recommendation adopted, 2011 WL 4443156 (N.D. Iowa Sept. 22, 2011) (finding probable cause based on an "affidavit

[that] also incorporates by reference affidavits previously submitted to [a different judge] in support of Title III telephone intercepts").   And, the Seventh Circuit Court of Appeals has recognized the propriety of an affidavit that incorporated by reference sworn, recorded, oral statements made before an issuing magistrate.   See, e.g., United States v. Mendel, 578 F.2d 668, 671 (7th Cir. 1978).   Accordingly, having cited no authority to support his position and the general approval by courts for incorporation by reference, I conclude that the TT2 affidavit properly incorporated the TT1 affidavit by reference.

Additionally, the facts surrounding the grants of the TT1 and TT2 wiretaps demonstrate that Agent Hall's earlier TT1 affidavit was properly and fully considered in granting the TT2 application.   Both wiretaps were approved by the same judicial officer only eight days apart. The plain language of Agent Wood's TT2 affidavit stated: "Your affiant hereby incorporates the sealed affidavit that was submitted in support of wire and electronic communications of TARGET TELEPHONE 1," which unambiguously pointed the issuing judicial officer to the earlier TT1 affidavit.   Docs. 439, 439-2.   Furthermore, Agent Wood's TT2 affidavit contained multiple references to the TT1 wiretap, Defendant's use of TT1, and Defendant's instruction to individuals in the drug trade to begin calling him at TT2—all of which show that the TT2 application was connected to the TT1 wiretap.   Additionally, Agent Hall's affidavit, which Agent Wood sought to incorporate by reference, was made under oath to the same issuing judicial officer.   All of these facts demonstrate that Agent Hall's TT1 affidavit was properly and fully considered in reviewing the TT2 application.

**D.     Necessity**

Defendant next alleges the Government failed to satisfy the "necessity" requirement of 18 U.S.C. § 2518(1)(c), which demands that each wiretap application reflect that "other

investigative procedures have been tried and failed or . . . reasonably appear unlikely to succeed

if tried or to be too dangerous." Doc. 304. Defendant states that the applications for the TT1

and TT2 wiretaps "are invalid in that they do not contain a sufficient showing of necessity for the

wiretaps[,]" but he fails to point to any specific deficiency in the agents' lengthy discussion of

alternative investigation methods. Id. at 7.

The burden of establishing necessity is "not great." United States v. Acosta, 807 F.

Supp. 2d 1154, 1239 (N.D. Ga. 2011) (quoting United States v. Gray, 410 F.3d 338, 343 (7th

Cir. 2005)).

> The necessity requirement is designed to ensure that electronic surveillance is
> neither routinely employed nor used when less intrusive techniques will succeed. .
> . . The affidavit need not, however, show a comprehensive exhaustion of all
> possible techniques, but must simply explain the retroactive or prospective failure
> of several investigative techniques that reasonably suggest themselves.

United States v. Van Horn, 789 F.2d 1492, 1495–96 (11th Cir. 1986). The Government's

showing of necessity "must be read in a 'practical and commonsense fashion,'" and the district

court is entitled to "broad discretion" in making its assessment of necessity. United States v.

Alonso, 740 F.2d 862, 868 (11th Cir. 1984). An order authorizing a wiretap "will not be

overturned 'simply because defense lawyers are able to suggest *post factum* some investigative

technique that might have been used and was not.'" Id. at 869 (quoting United States v. Hyde,

574 F.2d 856, 867 (5th Cir. 1978)).

The affidavits in support of the TT1 and TT2 applications demonstrate the agents

considered (and at times implemented) a multitude of additional investigative methods and

rejected them all as insufficient to fully achieve the goals of their investigation. Doc. 439-1 at

35. Specifically, in the affidavit in support of TT1, Agent Hall explains that the Government

had employed confidential informants and recorded conversations to aid in their investigation,

but that these sources were unable to provide information about all levels of the trafficking organization.   Id. at 35–38, 44.   Likewise, the Government employed physical surveillance, but that surveillance was hampered by the caution and secrecy employed by the target organization. Id. at 40–43.   Agent Hall asserts that the Government did not employ undercover agents, search warrants, or trash searches because the undercover officers would be put at significant risk and would be unlikely to penetrate deeply into the organization, and the use of warrants or searches would be more likely to alert the organization to the existence of a federal investigation than to produce significant evidence.   Id. at 43–46, 47–48.   The investigators conducted some interviews of confidential informants, obtained pen registers on TT1, and employing a pole camera video surveillance system.   While helpful, none of these other investigative techniques provided information about the full workings of the target organization.   Id. at 46–48.   Finally, Agent Hall stated that, because the target organization did not use the United States Postal Service or traditional banks, mail covers had not been employed and a financial investigation was unlikely to provide much information.   Id. at 49–50.   The affidavit shows that investigators employed several traditional investigative techniques achieving limited results and rejected several others as insufficient for their needs.   Accordingly, the affidavit in support of TT1 application adequately illustrates the necessity of a wiretap to support the Government's investigation.

In the affidavit in support of TT2, Agent Wood reiterated that these same methods had been employed, and like Agent Hall, explained why they were each insufficient to meet the needs of the investigation.   Doc. 439-3 at 30–46.   Additionally, Agent Wood stated that, while previous wiretaps had provided useful information, Defendant was transitioning from using TT1 to TT2 to facilitate his operation.   Id. at 46–48.   Because Defendant began switching phones

shortly after the previous wiretap had been authorized, Agent Wood explained that the wiretap of TT1 had not provided information sufficient to meet the needs of the investigation, and a wiretap of TT2 was necessary.

A wiretap may be utilized to determine the contours and dimensions of an otherwise impenetrable conspiracy, even where investigators have used conventional methods with limited success.   United States v. De La Cruz Suarez, 601 F.3d 1202, 1214 (11th Cir. 2010) (upholding wiretap where investigators had already uncovered substantial evidence using pen registers, physical surveillance, and five confidential informants, given that agents could use wiretaps to "determine the scope of the conspiracy and all of its members" and further surveillance would increase the likelihood of discovery and searches would tip off coconspirators).   A wiretap is deemed necessary if traditional methods of investigation fail to disclose "the full extent of [the defendant's] criminal activities and his coconspirators."   United States v. Perez, 661 F.3d 568, 582 (11th Cir. 2011) (upholding a district court's denial of a defendant's motion to suppress information obtained from a wiretap where the government had obtained evidence from confidential informants, but such evidence was not sufficient to disclose the full extent of the defendant's criminal activities.).

Because the agents' use of conventional investigative techniques (those reasonably appropriate under the circumstances) had failed to furnish sufficient evidence to dismantle the drug organization and successfully prosecute each of its members and other methods were unnecessarily risky, the agents' affidavits are sufficient to show the necessity of both wiretaps. The issuing judicial officer, therefore, properly concluded the Government had shown a sufficient "necessity" for the wiretap.

### E.   Failure to Seal

Defendant argues the wiretaps were not sealed in accordance with 18 U.S.C. § 2518(8)(a).   Doc. 304 at 9–12.   That provision requires that, "[i]mmediately upon the expiration of the period of the order [authorizing the interception of wire, oral, or electronic communications], or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions."   18 U.S.C. § 2518(8)(a).   As a prerequisite to offering testimony concerning the content of the intercepted communications or evidence derived therefrom, the Government must show "[t]he presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof . . . ."   Id. (cross-referencing 18 U.S.C. § 2517(3)).

A recording is sealed in accordance with the immediacy requirement of § 2518(8)(a) if it is sealed within one or two days of the expiration of the period of the order authorizing the wiretap.   United States v. Matthews, 431 F.3d 1296, 1307 (11th Cir. 2005).   Weekends need not be counted in determining whether sealing orders were filed immediately on the wiretap's expiration.   United States v. Wong, 40 F.3d 1347, 1375 (2d Cir. 1994); United States v. Maxwell, 25 F.3d 1389, 1394 (8th Cir. 1994); United States v. Carson, 969 F.2d 1480, 1498 (3d Cir. 1992); United States v. Rice, 2005 WL 2180019 at *1 (W.D. Ky. Sep. 9, 2005); United States v. Bennett, 825 F. Supp. 1512, 1527 (D. Colo. 1993).   Delays due to the issuing judge's unavailability are typically excused as well, absent any showing of tampering with the recordings or prejudice caused to the defendants.   United States v. Kusek, 844 F.2d 942, 946 (2d Cir. 1988); United States v. Ardito, 782 F.2d 358, 363 (2d Cir. 1986); cf. United States v. Suarez, 906 F.2d 977, 982 (4th Cir. 1990) (emphasizing that, absent prejudice to the defendants or some tactical advantage to the Government, courts will generally forgive late sealing).

The TT1 wiretap expired on Thursday, April 12, 2018, and the recordings were sealed five calendar days later on Tuesday, April 17, 2018.[9]  Doc. 439; Doc. 439-5.  Two days of that period are attributable to the weekend, and one day resulted from the unavailability of the issuing judge.  Id. at 18–19.  Thus, the TT1 recordings were sealed only two countable days after the expiration of the period of the Order authorizing the wiretap, which is within the time period established by the Eleventh Circuit for fulfilling the immediacy requirement.  Matthews, 431 F.3d at 1307.  There is no allegation (or evidence) of tampering, that the Government acted in bad faith, or that Defendant was prejudiced by timing of the TT1 sealing.  Accordingly, the recordings obtained from the wiretap of TT1 were timely sealed in accordance with § 2518(8)(a).

## F.    Geo-Location Data

Defendant argues that the Government illegally seized geo-location data, in violation of United States v. Jones, 565 U.S. 400 (2012).  Doc. 304 at 14–15.  Defendant argues he had a reasonable expectation of privacy in his location data, and the affidavits did not establish probable cause to obtain geo-location data from the target phones.  Id. at 15.  The Government did not address this argument in its response, but opposed Defendant's request at the motions hearing, arguing that the request for geo-location data was adequately supported by probable cause.  Docs. 427, 442.

The Government may obtain location data from a cell-phone so long as they obtain a warrant supported by probable cause.  Carpenter v. United States, 138 S. Ct. 2206, 2221 (2018)

---

[9]     Although Defendant also challenged the timing of the sealing of the TT2 recordings, there is no basis for that challenge.   The immediacy requirement of § 2518(8)(a) arises from "the expiration of the period of the order" authorizing the wiretap.   See also Jones v. United States, 224 F.3d 1251, 1257 (11th Cir. 2000) ("18 U.S.C. § 2518(8)(a) requires that immediately upon expiration of an order authorizing interception . . . the recordings must be sealed under the direction of the judge who issued the order.").   The TT2 recordings were sealed ten days before the wiretap expired.   Docs. 439-2, 439-6.   The TT2 recordings were therefore sealed in accordance with § 2518(8), and the Court should deny any request to suppress the TT2 recordings based on the timing of the sealing.

(holding that cell-site location information obtained under the Stored Communications Act was not validly obtained because the information was not collected pursuant to a warrant supported by probable cause, or a recognized exception to the warrant requirement.)   Here, the TT1 and TT2 affidavits contain detailed and extensive facts regarding the workings of a drug trafficking network operating in various locations, including conducting transactions out of automobiles, and regularly using cellular telephones.   Thus, geo-location data obtained from the target cellular telephones would provide evidence of network participants' whereabouts at particular times, which could be used to establish the participants' involvement in drug transactions. Additionally, geolocation data would "provide context with which to analyze wire interceptions" and help "identify sources of supply and other co-conspirators."   Doc. 439-1 at 53–54; Doc. 439-3 at 52.   I find that the affidavits establish sufficient probable cause to satisfy the Fourth Amendment's strictures as to each targeted telephone because the applications demonstrate that geo-location data from the target phones would likely provide evidence of criminal activity.

For the reasons set forth above, I find Defendant has no basis to suppress the evidence intercepted by the wiretaps of TT1 and TT2, and, therefore, I **RECOMMEND** the Court **DENY** Defendant's Motion, doc. 304.

## CONCLUSION

Based on the foregoing reasons, the Court **DENIES as moot** Defendant's Motions for Discovery and Notice under Rule 404(b), docs. 300, 301, 303.   The Court **DENIES without prejudice** Defendant's Motion for Release of Brady Materials and Motion for Disclosure of Identity of Confidential Human Sources.   Docs. 302, 305.   I **RECOMMEND** the Court **DENY**

Defendant's Motion to Suppress Evidence Obtained from Interception of wire and Electronic Communications.  Doc. 304.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.   Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.   Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).   A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.   Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 19th day of April, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA